**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
James E. Cecchi
Kevin Cooper
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

*Liaison Counsel for City of Fort*
*Lauderdale Police and*
*Firefighters' Retirement System*

[*Additional counsel listed on signature page*]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CITY OF FORT LAUDERDALE POLICE AND FIREFIGHTERS' RETIREMENT SYSTEM, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> COMMVAULT SYSTEMS, INC., SANJAY MIRCHANDANI, and JENNIFER L. DIRICO, <br><br> Defendants. | Case No.: <br><br> <u>CLASS ACTION</u> <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>DEMAND FOR A JURY TRIAL</u> |

1

Plaintiff City of Fort Lauderdale Police and Firefighters' Retirement System ("Plaintiff"), by and through counsel, alleges the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, its counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Commvault Systems, Inc. ("Commvault" or the "Company") with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles, shareholder communications, and conference calls concerning Defendants' public statements; and (d) review of other publicly available information concerning the Company and the Individual Defendants (defined below).

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a Class of all persons and entities that purchased or otherwise acquired Commvault securities between January 28, 2025 and January 26, 2026, inclusive (the "Class Period"), against Commvault and certain of its officers and executives (collectively, "Defendants"), seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder.

2

2.      Within the cyber resilience market, Commvault provides on-premise software licenses and cloud-delivered Software as a Service ("SaaS") solutions, among other offerings, aimed at protecting and restoring customer data and cloud applications.  Most of the Company's revenue is derived from on-premise term software licenses and subscription-based SaaS offerings.  Maintaining an appropriate balance between software licenses and SaaS sales is critical, as an overemphasis on SaaS would materially reduce margins due to, among other things, lower average selling prices ("ASP") and shorter contract durations.

3.      Because Commvault's software licenses and SaaS products are sold on a subscription basis, the Company claims Annualized Recurring Revenue ("ARR") and Net New ARR ("NNARR") are key performance metrics.  NNARR serves as a growth indicator because it measures the net increase in ARR during a given period.

4.      The action alleges that Defendants misled investors about Commvault's competitive positioning and concealed that rising competition forced the Company to offer substantial concessions on price and contract duration for its on-premise software licenses.  These competitive pressures ultimately pushed Commvault to rely more heavily on SaaS offerings, which, in turn, weakened Commvault's margins and caused a material reduction in NNARR.

5.     The truth emerged before markets opened on January 27, 2026, when Commvault announced its third-quarter fiscal year 2026[1] financial results. Commvault disclosed NNARR in constant currency of $39 million, missing analysts' expectations of approximately $45 million.  Chief Accounting Officer Danielle Abrahamsen ("CAO Abrahamsen") revealed that the mix of SaaS deals increased to "70%" during the quarter and highlighted that "landing these customers at a 2 to 3x smaller ASP than software . . . does have a significant impact on ARR."

6.     On this news, the price of Commvault common stock fell $40.23 per share, or about 31%, to close at a price of $89.13 per share on January 27, 2026.

7.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in market value of the Company's securities when the truth was disclosed, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

---

[1] Commvault's fiscal calendar runs from April 1 to March 31.

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).   Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.   Many of the acts and omissions charged herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in substantial part in this Judicial District, as Commvault is headquartered in this Judicial District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

12.     Based in Fort Lauderdale, Florida, Plaintiff City of Fort Lauderdale Police and Firefighters' Retirement System is a public pension fund that manages more than $1.2 billion in assets under management and provides retirement benefits to over 2,100 police officers, firefighters, and their beneficiaries.   As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased

Commvault securities during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

13.    Defendant Commvault is incorporated under the laws of Delaware with its principal executive offices located in Tinton Falls, New Jersey.  Commvault's common stock trades on the Nasdaq Global Select Market (the "Nasdaq") under the ticker symbol "CVLT."

14.    Defendant Sanjay Mirchandani ("CEO Mirchandani") was the Company's President, Chief Executive Officer ("CEO"), and Director at all relevant times.

15.    Defendant Jennifer L. DiRico was the Company's Chief Financial Officer ("CFO") until her departure from the Company at the end of 2025.

16.    Defendants CEO Mirchandani and CFO DiRico (together, the "Individual Defendants"), because of their positions with Commvault, possessed the power and authority to control the contents of, *inter alia*, Commvault's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of Commvault's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their

6

positions with the Company, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false and misleading statements pleaded herein.

17. Commvault and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18. Commvault purports to provide its customers with cyber-resiliency solutions designed to protect and recover data and cloud applications. The Company's products function across on-premise, hybrid, and multi-cloud environments and are offered through self-managed software, SaaS, integrated applications, or services managed by partners.

19. Commvault generates the majority of its revenue through its software term-licenses and SaaS offerings, with software licenses deployed on-premise at customer locations and SaaS solutions delivered through the Company's hosted cloud environment. It is essential that Commvault maintain a balanced mix between

7

its software and SaaS offerings, as a sales mix overly weighted toward SaaS would negatively impact margins due to lower ASPs and shorter contract durations.

20.    Because the Company's software licenses and SaaS offerings are subscription-based,  with revenue recognized ratably over the term of the applicable contract, Commvault informed investors that ARR and NNARR were key performance indicators.  NNARR, in particular, is a growth metric, as it reflects the net increase in ARR during a given period.

21.    Leading up to the Class Period, Commvault repeatedly claimed that it was strategically positioned to outpace its competitors in growth and would continue to gain market share.  For example, on October 29, 2024, during the Company's earnings call for the second quarter of the fiscal year 2025, CEO Mirchandani touted that Commvault was "taking share" from competitors because of "the breadth of the [Company's] platform."

**Defendants' Materially False and Misleading Statements**

22.    The Class Period begins on January 28, 2025.  Before markets opened that day, Commvault issued a press release announcing its financial results for the third quarter of its fiscal year 2025, ended December 31, 2024.  In the press release, CEO Mirchandani touted to investors that Commvault's "innovative approach to cyber resilience continues to win large net-new accounts and fuel our expansion business."

8

23.    During the related earnings call held that same day, CEO Mirchandani stated, "we believe that Commvault is strategically positioned to succeed and win[,]" as the Company was "bolstered by three fundamental growth drivers." He further elaborated on the three purported growth drivers, stating, in relevant part:

> First, *the cyber resilience market has never been more dynamic or full of promise. We are uniquely positioned to capitalize on this.* Today, customers face unrelenting cyber attacks, a shifting regulatory landscape, and the exponential growth of data from cloud native and the AI-generated applications. To deal with this, enterprises need a unified resilience platform that spans the hybrid multi-cloud environment. This is where Commvault thrives.
>
> * * * *
>
> *Which brings us to the second fundamental growth driver, the need for our game-changing cyber resilience offering.* They're unlike anything on the market and they make our industry-leading platform even stronger. Today, customers demand predictability, fast recoveries and solutions to address the latest threats. That's what our next-generation offerings do, security is built in, not bolted on. *We're out-innovating the competition on every level.*
>
> * * * *
>
> *This brings us to our third growth driver, our strong go-to-market motion combined with an incredible partner ecosystem to scale our business globally*. The strategy that we put in place to segment and refine our go-to-market motion over the last several quarters are paying dividends. *Our cyber resilience marketing message is resonating with customers and we're seeing record inflows and pipeline growth*.

24.    On April 29, 2025, Commvault issued a press release announcing the Company's financial results for the fourth quarter of its fiscal year 2025, ended March 31, 2025. In the press release, CEO Mirchandani boasted that "Commvault

surpassed all key metrics [and] ended the year with over 12,000 subscription customers," while also assuring investors that Commvault was "firmly positioned as a growth company with subscription revenue up 45% in Q4."

25. During the related earnings call held that same day, an Oppenheimer analyst asked about what the Company was "seeing in the competitive landscape." CEO Mirchandani responded by asserting that the Company's "technology with Commvault Cloud in a hybrid world is the broadest capability there is. So, customers work with us. . . ."

26. In continuing to respond to that analyst, CEO Mirchandani further downplayed investors' concerns regarding competition, stating that "the overall on-premise market that some of the competitors you mentioned play in is flat to very low single digit. If you look at [Commvault's] growth, be it on revenue or ARR, it's healthy double digits, and that means we're taking share[.]"

27. During the same call, a D.A. Davidson analyst asked what the Company's 2026 financial guidance "impl[ies] from a sales productivity, close rate, et cetera, standpoint," and whether it "impl[ies] things are flat with last year or further improvements building on last year?" In response, CFO DiRico assured investors that "we're not assuming massive gains in productivity, but we're quite confident in the durability of our model over the long term."

10

28.    On July 29, 2025, Commvault issued a press release announcing its financial results for the first quarter of its fiscal year 2026, ended on June 30, 2025. CEO Mirchandani stated that "Commvault delivered a strong start to the fiscal year, fueled by customer growth, disciplined execution, and rising demand for our industry-leading cyber resilience platform."  Additionally, he continued to tout the Company's ability to outperform its peers, stating, "[w]ith a best-in-class partner ecosystem and continuous innovation that we believe sets us apart, we are well-positioned to continue to take share in fiscal 2026 and beyond."

29.    On the corresponding earnings call, and in response to a Cantor Fitzgerald analyst's question about "competitive displacements" and "changes" regarding "competition," CEO Mirchandani stated, in relevant part:

> [F]rom a displacement point of view, *if you look at just the software on-premise set of capability, that's a market that's growing low single digits.  So we're growing in a healthy pattern, which means we are taking share*.  We're taking share because of a few things. One, our technology continues to lead. . . .

> The third piece is that the problem we solve, the hard problem we solve for customers goes beyond data protection.  We're now looking at entire environments on cloud native.  We're looking at true multi-cloud.  We're looking at SaaS environments. . . .  So[,] when you take those factors and the customers have -- customers are definitely consolidating.  More in this case, is not better.  Having more vendors, more policies, more feet on the street to make things work is actually harder.  *And so[,] there is a definite direction of consolidation to our*

11

*advantage because our platform uniquely provides that capability at scale and does it in a hybrid environment*.

30. In response to that same analyst's question, CFO DiRico also minimized concerns about competition, stating, in relevant part:

[R]egarding your overall SaaS, ultimately, *what you're seeing is just strength in our overall organic business*. Yes, Sanjay just said *on the competition element, we're not really seeing too many changes there*. Ultimately, customers want our full platform and our SaaS platform absolutely meets the moment. So ultimately, it's just growth in the organic business.

31. During that same call, an Oppenheimer analyst asked whether Commvault was experiencing any "pull forward activity" from its customers. In response, CFO DiRico expressed confidence that Commvault was "not seeing any pull forward[,]" and that "it's just strength in the overall market and our products meeting the needs of customers and our team executing incredibly well."

32. On October 28, 2025, during the Company's earnings call in connection with its financial results for the second quarter of fiscal year 2026, Commvault continued to assure investors that it was not experiencing competitive pressures. During the call, a Piper Sandler analyst questioned whether the Company's gross margin compression was due to "competitive pressures or further discounting in the space." In response, CFO DiRico insisted that "the bulk of this is very much the acceleration of SaaS and the shift to terms[,] and that "there [is] really nothing else to talk about there."

12

33.    Then, on December 4, 2025, Commvault issued a press release announcing that CFO DiRico was departing from the Company "at the end of the calendar year to pursue another opportunity."

34.    The above statements identified in ¶¶ 22-32 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects to make the statements made, in light of the circumstances under which they were made, not false and misleading.  Specifically, Defendants failed to disclose that: (1) Commvault's competitive positioning was materially weaker than Defendants had represented to investors; (2) due to the undisclosed increase in competition, Commvault was forced to make significant concessions on price and contract duration for its software licenses; (3) as these concessions became unsustainable, SaaS became a larger portion of the Company's sales mix; (4) in turn, the increasing mix of SaaS sales, which carry shorter term durations and lower ASPs, negatively impacted the Company's margin and NNARR; and (5) as a result, Defendants' positive statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### The Truth Emerges

35.    The truth emerged before markets opened on January 27, 2026, when Commvault issued a press release announcing its financial results for the third

13

quarter of fiscal year 2026.  Commvault reported third-quarter NNARR in constant currency of $39 million, well below analysts' expectations of approximately $45 million, and disclosed that total ARR growth in constant currency decelerated to 17% year-over-year, down from 21% in the prior quarter.

36.    During the related earnings call, a William Blair analyst asked Commvault to elaborate on the third-quarter NNAAR results "versus the $45 million" previously guided, as "something must have not played out as [the Company] expected."  In response, CEO Mirchandani stated:

> [*I*]*t's really just—we sold a lot of SaaS deals, land deals this quarter.  And when you—that's why you have to look at it on an annual basis because there will be variation quarter-to-quarter*.  We sell a lot of software, and it was also a big software land quarter for us.  So[,] when you take—you take that together, it's—that kind of explains the delta, if you would.  But by every stretch of the imagination, it was a very strong quarter.

37.    In response to that same question, CAO Abrahamsen provided further clarification as to the increased mix of SaaS deals, stating:

> And Jason, let me just add a little bit more with the numbers, too, which I think might help last quarter for perspective*.  61% of our net new ARR was SaaS.  This quarter, that's 70%.  Again, when you're talking landing these customers at a 2 to 3x smaller ASP than software, that does have a significant impact on ARR*.

38.    During that same call, a KeyBanc analyst asked about SaaS net revenue retention (NRR) and whether "there [was] anything from a go-to-market perspective

14

incentive-wise to shift the sales force focus over to landing new logos as opposed to expansion."  In response, CEO Mirchandani stated:

> We do our comp plans on an annual basis, Eric.  And so[,] there's been no mid-quarter or midyear change to that.  It's just between the fact that what we're delivering to our customers in SaaS as part of the platform in conjunction with our software capabilities is what they need. . . . [W]e're seeing a healthy pickup there.  And also the work we're doing with our ecosystem partners is also making it easy for customers to get access to and use it.  So[,] I think the product stands on its own, the SaaS capability stand on its own.

39.    On this news, the price of Commvault common stock fell $40.23 per share, or about 31%, from a closing price of $129.36 per share on January 26, 2026, to a closing price of $89.13 per share on January 27, 2026.

40.    Analysts swiftly responded to Commvault's disclosures.  For example, D.A. Davidson analysts issued a report titled "Another Headache Inducing Quarter From CVLT" and significantly reduced their price target.  In the report, Davidson analysts explained:

> Mgmt. attributed the ARR miss to two dynamics: 1) *a higher mix of NNARR coming from SaaS & the fact that SaaS deals typically land smaller than Term-License deals*, and 2) *a higher mix of new logo Term-License deals than expected, which carry longer duration & come with some price concessions for that longer duration, which has a negative impact on ARR* as it is calculated as TCV / duration.

41.    In that same report, the D.A. Davidson analysts further noted:

15

With respect to #2, new logo ***Term-License deals do carry longer duration than Term-License cross-sell deals (~3-4 years vs. ~1-2 years), and there are some price concessions given on those deals.*** These price concessions are just ~2-5% per mgmt., so it's hard to see how that could lead to a NNARR shortfall that is anywhere close to what it was. ***These explanations do not seem to have been enough for investors, who by & large are still concluding there must have been some other deals that pushed or were otherwise lost.***

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Commvault securities between January 28, 2025 and January 26, 2026, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers, and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

43.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Throughout the Class Period, Commvault common stock actively traded on the Nasdaq under the symbol "CVLT." Millions of shares of Commvault common

16

stock were traded publicly during the Class Period on the Nasdaq. As of May 7, 2026, the Company had more than 41 million shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Commvault or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

44.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

45.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests that conflict with those of the Class.

46.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a)    whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

b)    whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

17

c)      whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders misrepresented material facts about the business, operations, and prospects of Commvault;

d)      whether statements made by Defendants to the investing public misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Commvault;

e)      whether the market price of Commvault securities during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

f)      the extent to which the members of the Class have sustained damages and the proper measure of damages.

47.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

**UNDISCLOSED ADVERSE INFORMATION**

48.     The market for Commvault securities was an open, well-developed, and efficient market at all relevant times.  As a result of the materially false and/or

18

misleading statements and/or omissions particularized in this Complaint, Commvault's securities traded at artificially inflated prices during the Class Period. Plaintiff and the other members of the Class purchased Commvault's securities relying upon the integrity of the market price of the Company's securities and market information relating to Commvault and have been damaged thereby.

49.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of the Company's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Commvault's business, operations, and prospects as alleged herein. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business, thus causing the Company's securities to be overvalued and artificially inflated or maintained at all relevant times. Defendants' materially false and/or misleading statements directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class who purchased the Company's securities at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

50.    As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

51.    As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Commvault, their control over, receipt, and/or modification of Commvault's allegedly materially misleading statements and omissions, and/or their positions with the Company, which made them privy to confidential information concerning Commvault, participated in the fraudulent scheme alleged herein.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

52.    As a result of their purchases of Commvault's securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

53.    In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants

20

are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Commvault who knew that the statement was false when made.

## LOSS CAUSATION

54. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

55. As detailed herein, during the Class Period, Defendants made materially false and misleading statements and omissions and engaged in a scheme to deceive the market. This artificially inflated the prices of Commvault's securities and operated as a fraud or deceit on the Class. When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of Commvault's securities fell precipitously, as the prior artificial inflation came out of the price.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

56. The market for Commvault securities was open, well-developed, and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Commvault

securities traded at artificially inflated and/or maintained prices during the Class Period.  Plaintiff and other members of the Class purchased the Company's securities relying upon the integrity of the market price of Commvault securities and market information relating to Commvault and have been damaged thereby.

57.    At all times relevant, the market for Commvault securities was an efficient market for the following reasons, among others:

a)    Commvault common stock was listed and actively traded on the Nasdaq, a highly efficient and automated market;

b)    As a regulated issuer, Commvault filed periodic public reports with the SEC and/or the Nasdaq;

c)    Commvault regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

d)    Commvault was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

58.     As a result of the foregoing, the market for Commvault securities promptly digested current information regarding Commvault from all publicly available sources and reflected such information in the Company's securities prices. Under these circumstances, all purchasers of Commvault securities during the Class Period suffered similar injury through their purchase of securities at artificially inflated prices, and a presumption of reliance applies.

59.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business, operations, and prospects—information that Defendants were obligated to disclose but did not—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment decisions.   Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNTS AGAINST DEFENDANTS

## COUNT I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

60. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61. Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Commvault's securities; and (iii) cause Plaintiff and other members of the Class to purchase Commvault securities at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

62. Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Commvault securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary

24

participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

63.  Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Commvault's business, operations, and prospects, as specified herein.  Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Commvault's business, operations, and prospects, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Commvault and its business, operations, and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of conduct of business that operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

64.  Each of the Individual Defendants' primary liability and controlling person liability, arises from the following facts: (i) each of the Individual Defendants was a high-level executive and/or director at the Company and a member of the

25

Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's business, operations, and prospects; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to, other members of the Company's management team, internal reports, and other data and information about the Company's financial condition and performance at all relevant times; and (iv) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public, which they knew and/or recklessly disregarded was materially false and misleading.

65.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Commvault's operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of its securities.  As demonstrated by Defendants' misstatements of the Company's business, operations, and prospects, Defendants, if they did not have actual

26

knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

66.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Commvault securities was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants or upon the integrity of the markets in which the securities trade, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants, Plaintiff and the other members of the Class purchased Commvault securities during the Class Period at artificially inflated prices and were damaged thereby.

67.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known of the truth regarding the problems that Commvault was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased Commvault securities, or, if they had purchased such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

68.     By virtue of the foregoing, Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

69.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against All Individual Defendants

70.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

71.     The Individual Defendants acted as controlling persons of Commvault within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company, participation in, and/or awareness of the Company's operations, and intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these

statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.   In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

73.   As set forth above, Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act.  As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

74.   WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

a)   Declaring this action to be a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

b)   Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

29

c)  Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

d)  Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

75.  Plaintiff demands a trial by jury.

Dated: July 2, 2026

Respectfully submitted,

By: */s/ James E. Cecchi*

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
James E. Cecchi
Kevin Cooper
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com
kcooper@carellabyrne.com

*Liaison Counsel for City of Fort Lauderdale Police and Firefighters' Retirement System*

**SAXENA WHITE P.A.**
Maya Saxena (*pro hac vice* forthcoming)
Lester R. Hooker (*pro hac vice* forthcoming)
Nicholas Corso (*pro hac vice* forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434

Tel.: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com
ncorso@saxenawhite.com

Marco A. Dueñas (*pro hac vice*
forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
mduenas@saxenawhite.com

*Counsel for Plaintiff City of Fort
Lauderdale Police and Firefighters'
Retirement System*

**KLAUSNER KAUFMAN JENSEN
& LEVINSON**
Robert D. Klausner
7080 NW 4th Street
Plantation, FL 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com

*Additional Counsel for City of Fort
Lauderdale Police and Firefighters'
Retirement System*

31